THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROBERT
S. CLARK, Appellant, *v.* JOHN F. GILCHRIST et al.,
Constituting the State Tax Commission, Respondents.

Tax — income tax — stock dividends — retroactive amend-
ment of Tax Law pending appeal — Court of Appeals will
apply law as it stands at time of its decision — stock dividend
allocated by trustee to beneficiary of trust is received by bene-
ficiary as a shareholder and is not subject to income tax — no
distinction between stock dividends in hands of shareholder of
record and stock dividends in hands of beneficiary of trust —
retroactive statute no infraction of any constitutional limita-
tion — constitutional provision that money shall not be paid
from State treasury except in pursuance of appropriation not
infringed.

1. Where, pending appeal from a decision of the Appellate Division
in a proceeding to review an income tax assessment, the Legislature
amends the law in regard to the matter in question by statute declared
to be retroactive as of a time prior to the assessment, the Court of
Appeals will apply the law as it stands at the time of its decision.

2. Under the provisions of chapter 543 of the Laws of 1926 amend-
ing sections 350 and 359 of the Tax Law (Cons. Laws, ch. 60) and
defining the word " dividend " as meaning " any distribution made
by a corporation out of its earnings or profits," the words " stock
dividends " as meaning " new stock issued for surplus or profits
capitalized to shareholders in proportion to their previous holdings,"
and providing that " stock dividends when received by a shareholder
shall not be subject to tax," a stock dividend, though allocated by a
trustee to the beneficiary of a trust, is received by the beneficiary as a
shareholder within the meaning of the statute and should not be
added to the annual tax return as part of the income of the year.

3. A contention that a distinction is to be drawn between stock
dividends in the hands of a shareholder of record and stock dividends
in the hands of a beneficiary of a trust, that upon allocation or pay-
ment to the beneficiary, the quality of capital is lost and that of
income re-established, cannot be sustained.  The Legislature had no
apparent thought of thus distinguishing the incidents of an equitable
right from those of legal ownership or title.  The beneficiary receives
the shares through the conduit of the trust, yet the substance of the
transaction is the same as if he were the legal owner of an estate for
life and had gathered in the dividends for himself.

4. There is no infraction of any constitutional limitation upon legislative power in the provision that the statute (L. 1926, ch. 543) shall be retroactive in effect. It does not relieve the taxpayer of an undisputed burden as a mere largess or gratuity, but readjusts public revenues for the promotion of a public purpose. The methods and subjects of taxation are matters of governmental policy. What the Legislature determines in respect of policy, it is also competent to change, and the changes may work backward as well as forward.

5. Nor does the act go counter to section 21 of article 3 of the State Constitution providing that " no money shall ever be paid out of the treasury of this State or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law." The question is not here whether in default of adequate appropriation, the reaudit will be effective to give the relator back his money. The result would be the same, however, though present appropriation were lacking. If necessary it may be afterwards supplied.

*People ex rel. Clark* v. *Gilchrist,* 214 App. Div. 117, reversed.

(Argued May 3, 1926; decided July 9, 1926.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered September 15, 1925, which unanimously confirmed, on certiorari, a determination of the State Tax Commission in a proceeding for the revision of an income tax assessment.

*Nathan L. Miller, D. A. Embury* and *H. Bartow Farr* for appellant. The determination of the Attorney-General and the State Tax Commission that " true " stock dividends were not intended to be taxed as income by the Personal Income Tax Law is the correct interpretation of that law. (*Eisner* v. *Macomber,* 252 U. S. 189; *Matter of Osborne,* 209 N. Y. 450; *Towne* v. *Eisner,* 245 U. S. 418; *Leland* v. *Hayden,* 102 Mass. 542; *Greene* v. *Bissell,* 79 Conn. 547; *Hartley* v. *Pioneer Iron Works,* 181 N. Y. 73; *Insurance Press* v. *Montauk Wire Co.,* 103 App. Div. 472; *McCallum* v. *Corn Products Co.,* 131 App. Div. 617; *U. S. Trust Co.* v. *Heye,* 224 N. Y. 242; *Peabody* v. *Eisner,* 247 U. S. 349.) Since a stock dividend is not taxable income to an individual it is not taxable

income to a trust and since it is not taxable income to a trust, it is not taxable income to a beneficiary of a trust. (*Smietanka* v. *First Trust & Savings Bank,* 257 U. S. 602; *Beebe* v. *Griffing,* 14 N. Y. 235; *Bellegard* v. *Union Bag & Paper Co.,* 90 App. Div. 577; 181 N. Y. 519; *De Filippis* v. *Falkenberg,* 170 App. Div. 153; 219 N. Y. 581; *People ex rel. Klauber* v. *Wendell,* 196 App. Div. 627; 232 N. Y. 549.) The act is constitutional because it is, and was intended to be, declaratory of existing law. (*People* v. *Davenport,* 91 N. Y. 574.) The act, however construed, does not violate article VIII, section 9, of the Constitution. (*Matter of Guiteras,* 122 Misc. Rep. 523; 214 App. Div. 722; *Matter of Burnham,* 236 N. Y. 608; *Wrought Iron Bridge Co.* v. *Town of Attica,* 119 N. Y. 204; *Lehigh Valley Railroad Co.* v. *Canal Board,* 204 N. Y. 471; *Munro* v. *State,* 223 N. Y. 208; *People* v. *Westchester Co. National Bank,* 231 N. Y. 465; *People ex rel. Eckerson* v. *Board of Education,* 126 App. Div. 414; 193 N. Y. 601; *Matter of Borup,* 182 N. Y. 222.) The Legislature has the power to correct its own mistake or inadvertence or to clear up an ambiguity which would otherwise result in taxing stock dividends as income when they were not in fact income. (*People ex rel. Lucey* v. *Molloy,* 35 App. Div. 136; 161 N. Y. 621; *People ex rel. Eckerson* v. *Board of Education,* 126 App. Div. 414; 193 N. Y. 601; *Matter of Rochester Trust Co.,* 42 Misc. Rep. 581.)

*Charles E. Hughes, George Welwood Murray, Winthrop W. Aldrich* and *Harrison Tweed, amici curiæ.* A stock dividend does not constitute a distribution of any of the earnings or profits of the corporation. (*Eisner* v. *Macomber,* 252 U. S. 189; *Towne* v. *Eisner,* 245 U. S. 418.) A stock dividend is not gain, profit or income to an individual or fiduciary stockholder. (*Weiss* v. *Stearn,* 265 U. S. 242; *Marr* v. *United States,* 268 U. S. 536; *Trefry* v. *Putnam,* 227 Mass. 522.) The construction placed upon the words of the statute by the Attorney-General and

the State Tax Commission was impliedly ratified by the Legislature in its failure to amend at five consecutive sessions, and expressly ratified at the last session, immediately after the Appellate Division questioned the correctness of that construction. (*People* v. *Davenport*, 91 N. Y. 574; *Tiger* v. *Western Investment Co.*, 221 U. S. 286; *New York Central & Hudson River R. R. Co.* v. *Williams*, 199 N. Y. 108.)

*Albert Ottinger, Attorney-General (Henry S. Manley* of counsel), for respondents. Section 359 and section 350, subdivision 8, of the Tax Law together are a clear legislative direction that true stock dividends be taxed as income under the Personal Income Tax Law. (*People ex rel. Pullman Company* v. *Glynn*, 130 App. Div. 332; 198 N. Y. 605; *De Ganay* v. *Lederer*, 250 U. S. 376; *Eisner* v. *Macomber*, 252 U. S. 200.) If chapter 543 of Laws of 1926 intends the repeal of the tax previously imposed upon appellant in relation to the stock dividends received by him it is unconstitutional and void. (*People ex rel. Western Union Tel. Co.* v. *Roberts*, 30 App. Div. 78; 156 N. Y. 693; *Matter of Waterman*, 33 Misc. Rep. 569; *Rockaway Pacific Corporation* v. *Stotesbury*, 255 Fed. Rep. 345.) On the assumptions stated, chapter 543 of Laws of 1926 violates section 1 of article VII and section 9 of article VIII of the Constitution. (*Matter of Guiteras*, 122 Misc. Rep. 523; 214 App. Div. 722; *Matter of Burnham*, 205 App. Div. 893; 236 N. Y. 608; *People* v. *Westchester Co. Nat. Bank*, 231 N. Y. 465; *Munro* v. *State*, 223 N. Y. 208; *Lewis* v. *State*, 197 App. Div. 712; 234 N. Y. 587.)

CARDOZO, J. The Singer Manufacturing Company capitalized its surplus in December, 1920, and declared a stock dividend. By force of that declaration, a dividend of 10,642 shares was received by the trustees under the will of Alfred Corning Clark, stockholders of record.

Following the rule in *Matter of Osborne* (209 N. Y. 450) the trustees paid the shares to the appellant, a beneficiary of the trust. The question is whether the dividend should be added to the annual tax return as part of the income of the year.

The Income Tax Law of New York (Cons. Laws. ch. 60) is framed upon the model of the Federal Income Tax Act, though the two differ in some particulars. The correspondence is so close, however, that decisions under the Federal act are important aids to the construction of the statute of the State.

The Federal act of 1913 (38 Stat. 114) imposes a tax on the net income, gains or profits, derived from interest, rents or dividends. The Supreme Court of the United States held in *Towne* v. *Eisner* (245 U. S. 418) that the word " dividend " as there used does not include stock dividends which capitalize the profits of the company declaring them.

The next Federal act, that of 1916 (39 Stat. 756), adds a provision that dividends shall include any distribution out of earnings or profits accruing since March 1, 1913, whether in cash or in stock of the corporation, which stock dividend shall be considered income to the amount of its cash value. Construing this act, the Supreme Court of the United States held in *Eisner* v. *Macomber* (252 U. S. 189) that the intention of Congress was to tax stock dividends as income, but that the intention could not prevail for the reason that the power of Congress under the Sixteenth Amendment to the Federal Constitution is confined to the taxation of " income " in the proper sense, and does not extend to income enlarged by artificial definitions. No such limitation affects the power of the States.

A third Federal act, that of 1918, was adopted before the decision in *Eisner* v. *Macomber*, and its provisions as to dividends do not differ in essentials from the provisions there considered.

12

Our own income tax was adopted in February, 1919. The term " income " is defined (§ 359, subd. 1) as includ-·ing " gains, profits and income " derived from interest, rent and dividends, and a " dividend " is defined (§ 359, subd. 8) as meaning " any distribution made by a corporation out of its earnings or profits to its shareholders or members, whether in cash or in other property or in stock of the corporation."

In March, 1920, the Attorney-General filed with the Comptroller an opinion to the effect that under the statute of New York, a stock dividend in the strict sense is not a gain, profit or income, and is not taxable as such. This ruling did not apply to dividends payable in the stock of a subsidiary corporation or of any corporation other than the one by which the dividend was declared (*Peabody* v. *Eisner*, 247 U. S. 347; *U. S.* v. *Phellis*, 257 U. S. 156). It did not apply to dividends of treasury stock, *i. e.*, stock previously issued, but lawfully reacquired by the corporation for later distribution. The stock dividends which, in the view of the Attorney-General at that time, were excluded from the tax, are those distributed among shareholders in proportion to their previous holdings as evidence of a new capitalization of surplus or undivided profits. .

The administrative officers of the State accepted this ruling, and adhered to it thereafter in the enforcement of the statute. Article 61 of the Personal Income Tax Regulations issued by the Comptroller in November, 1921, contains the statement: "A true stock dividend is not taxable as a dividend." Taxpayers made their returns upon the faith of this pronouncement. Successive Legislatures came together and dissolved without condemning or annulling it. Till the decision under review, taxgatherer and taxpayer rested upon the Comptroller's regulation, whether it was legal or illegal, and conformed to it in practice.

The State Tax Commission in ruling against the tax-

payer in this case, drew a distinction between the receipt of a stock dividend by virtue of one's legal title as a shareholder, and the receipt of a like dividend as the beneficiary of a trust. To the shareholder the stock dividend is not a profit, for the " old and new certificates together are worth only what the old ones were worth before" (*Towne* v. *Eisner, supra*). To the *cestui que trust* for life, the splitting up of the certificates is a distribution of what would otherwise be corpus for the use of the remaindermen. In the view of the Commission, what is income within the meaning of a will or deed of trust is income also, and not corpus, within the meaning of the statute. Undoubtedly, the same conclusion would have been reached if the appellant, instead of being the beneficiary of a trust, had been the holder of a legal estate for life. The owner of the fee, to borrow the phraseology of the law of real estate, is exempt; the beneficiary or life tenant is held.

The Appellate Division disregarded that distinction in its disposition of the appeal. By its ruling, stock dividends are taxable as income unconditionally and always. Apart from the special definitions of the statute they may be classified as capital. None the less, they have the quality of income for the purpose of taxation, and this for the reason that, in the view of the Appellate Division, the statute (§ 350, subd. 8) so describes them. That premise accepted, the conclusion, of course, follows that the Comptroller's regulation, in force since 1921, is an unauthorized exercise of power. The ruling, therefore, was that stock dividends whether paid to the legal owner of the shares or to the beneficiary of a trust, are gains, profits and income subject to the tax.

We find it unnecessary to determine whether the statutory definitions as they stood at the time of the decision of the court below, confirm that decision or undo it. Conflicting readings of the statute, or, more accurately, of the meaning of the lawmakers, have been

pressed upon us at our bar with subtle and ingenious argument. Later legislation relieves us of the duty of making choice between them. The decision of the Appellate Division was made in September, 1925. At the first opportunity thereafter, the Legislature (L. 1926, ch. 543) changed the definition of a dividend by excluding therefrom stock dividends in the strict sense, and did this by a statute declared to be retroactive as of January 1, 1919. In such circumstances, we apply the law as it stands at the time of our decision (*Robinson* v. *Robins Dry Dock & Repair Co.*, 238 N. Y. 271, 281; *McMaster* v. *Gould*, 240 N. Y. 379, 385).

By section 1 of the new act, " the word ' dividend ' means any distribution made by a corporation out of its earnings or profits to its shareholders or members, whether in cash or in other property or in stock of the corporation, other than stock dividends as herein defined. ' Stock dividends ' means new stock issued, for surplus or profits capitalized, to shareholders in proportion to their previous holdings."

By section 2, " Stock dividends when received by a shareholder shall not be subject to tax but if before or after the distribution of any such dividend the corporation proceeds to cancel or redeem its stock at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock shall be treated as a taxable dividend and included in gross income; provided, however, that any stock dividend shall be considered in computing gain, profit or income upon the sale, exchange or other disposition of the stock upon which a stock dividend has been declared or of the stock included in such stock dividend."

By section 3, the act is to take effect immediately, with retroactive operation.

The Attorney-General would have us hold that even

under this act a distinction is to be drawn between stock dividends in the hands of a shareholder of record and stock dividends in the hands of the beneficiary of a trust. He concedes that in the one situation, the dividends are no longer to be classed as income. He insists that in the other, *i. e.,* upon allocation or payment to the beneficiary, the quality of capital is lost, and that of income re-established. We are persuaded that the Legislature had no thought of thus distinguishing the incidents of an equitable right from those of legal ownership or title. The propriety of such a distinction was pressed upon its notice. In the bill as introduced, the words were added: " Where a stock dividend is received by a fiduciary shareholder, and is paid under a will, deed of trust, or other agreement, to a beneficiary taxable under this article, it shall constitute taxable income and be included by the beneficiary in gross income for the year of its receipt." This sentence was dropped from the bill before its passage. The opportunity was at hand to establish a distinction by words too clear for misconstruction. The Legislature did not reject it only to baffle the uncertain taxpayer by cloaking the same distinction in words of doubtful implication. " Taxation is a hard fact " (*Matter of Hoffman,* 143 N. Y. 327, 334), and for the determination of its incidence, the realities of " actual and practical ownership " (*Matter of Hoffman, supra*) must count for more in any just system than the style or label of estates. The beneficiary receives the shares through the conduit of the trust, yet the substance of the transaction is the same as if he were the legal owner of an estate for life, and had gathered in the dividends for himself. The Tax Law in its entire framework joins the burden to the usufruct (*People ex rel. Field* v. *Gilchrist,* 240 N. Y. 301). The fiduciary, where there is a trust for payment, makes a return, but a return for information only (Tax Law, § 365). The beneficiary pays. What is intermediate is ignored. What is ultimate controls.

We may reach the same end by another path. The shares, while in the hands of the fiduciary, were not gains or income " of the trust." The trust was not increased by the subdivision of its parts (*Towne* v. *Eisner, supra*). That being so, the dividends would have no place in the information return to be made by the fiduciary. He is not required to make report of changes of the corpus. If the dividends were not " income of the trust " in the hands of the fiduciary, they were not transmuted into " income of the trust " as they passed out of his hands into those of the beneficiary. Payment is indeed an irrelevant circumstance in the measurement of the tax. The beneficiary must bear a tax upon his distributive share of the net income of the trust, " whether distributed or not " (Tax Law, § 365, subd. 4). The " income of the trust " as reported in his return should be the same as that reported in the return of the trustee.

There are other signposts of intention, if these be thought inadequate. The same Legislature that excluded stock dividends from the category of income for the purpose of taxation, went farther and amended the Personal Property Law (Cons. Laws, ch. 41) by enacting that under any will or deed hereafter made, unless otherwise therein provided, stock dividends shall be principal and not income of a trust (L. 1926, ch. 843; Pers. Prop. Law, § 17-a). The rule previously applied had resulted in so many complications and obscurities as to be almost unworkable in practice ( *U. S. Trust Co.* v. *Heye,* 224 N. Y. 242; *Bourne* v. *Bourne,* 240 N. Y. 172). It involved elaborate accountings for the purpose of determining how far the dividends were the result of profits accumulated before the creation of the trust, and how far the result of profits accumulated thereafter. The Legislature evinced its will that there should be an end to these complexities hereafter in the administration of the law of trusts. It had no thought of keeping them alive in the administration of the Tax Law. If stock dividends are still taxable as income to the

extent that they belong to life tenant or beneficiary, the State may contest the propriety of the apportionment between life estate and remainder.   So to read the statute is to misread it.   In effect, the Legislature has said that stock dividends in their intrinsic nature are merely readjustments of the corpus.   Testator or settlor may provide, if he please, that in the event of readjustment a part of the corpus corresponding to the dividends shall be deducted from the shares of the remaindermen and given to the life tenant.   There is nothing unheard of in the diminution of the principal before the falling in of a remainder.   The founder of the trust may vary the devolution of the dividend as the needs of life tenant or of remaindermen are uppermost in his thoughts.   He cannot vary with his wishes the conception of the dividend embodied in the law.   Corpus it remains, whether the enjoyment is by one or by another.

We hold, then, that a stock dividend, though allocated by a trustee to the beneficiary of a trust, is received by the beneficiary as a shareholder within the meaning of the statute.   There is reinforcement for this view in the thought that the tax upon the dividend is not abolished altogether.   When the stock included within the dividend is sold, the proceeds are to be considered (to what extent or how there is no need to inquire at this time) in computing gains or profits (L. 1926, ch. 543, § 2).   The State would have us say that the beneficiary of a trust is not to be reckoned as a shareholder within the meaning of section 2, though he receive the shares from the trustee and thereafter hold them until sale.   We cannot bring ourselves to the acceptance of a reading so narrow in its literalism.   In the circumstances stated, the beneficiary of a trust is chargeable as a shareholder within the meaning of section 2.   If chargeable under section 2, he is exempt under section 1.

We find no infraction of any constitutional limitation upon legislative power in the provision that the statute

(L. 1926, ch. 543) shall be retroactive in effect. This is not a statute relieving the taxpayer of an undisputed burden as a mere largess or gratuity. If such were its quality, there would be need to consider whether remission of a tax already paid would be subject to condemnation as a gift of public moneys (*Loan Assn.* v. *Topeka,* 20 Wall. 655; *Lewis* v. *State,* 197 App. Div. 712; 234 N. Y. 587). This is not a gift at all, but a readjustment of the public revenues for the promotion of a public purpose. There existed a situation fraught with opportunities for confusion and injustice. Returns had been made in reasonable reliance on the Comptroller's regulation. If there had been mistake, it was mistake induced by the agents of the State itself. Taxpayers thus misled had regulated their affairs on the assumption that their tax accounts were closed. To reaudit returns so made might impose a grievous burden. Mistake, even mistake of law, will lay the basis of an equity which lawmakers may heed (*People ex rel. Eckerson* v. *Bd. of Ed.,* 126 App. Div. 414; 193 N. Y. 601; *U. S.* v. *Realty Co.,* 163 U. S. 427, 438). There was the menace of inequality besides to accentuate the hardship. The Tax Law prohibits a reaudit after three years have gone by (§ 373). As a consequence taxpayers who made returns in 1919–1922 would be exempt. Those of later years would pay. But the advantage flowing from the new act was not solely for the individual. There was advantage also, or the fair promise of it, for the State. The Commission would be spared the labor of unraveling and reauditing a vast number of returns. The tax, moreover, would not be lost forever. By the terms of the statute, it might be collected when the shares were sold, and then the dividends would be considered in the computation of the gains (L. 1926, ch. 543, § 2). The opportunity would thus be offered to lay a tax upon shares omitted from old returns which were unimpeachable through lapse of time (Tax Law, § 373). The net result to the State by force of the transfer of the tax from

the receipt to the later sale might thus be profit, and not loss.

The methods and subjects of taxation are matters of governmental policy. What the Legislature determines in respect of policy, it is also competent to change. The changes may work backwards as well as forwards (*People ex rel. Lucey* v. *Malloy*, 35 App. Div. 136; affd., on opinion below, 161 N. Y. 621; *Matter of Pardee* v. *Rayfield*, 192 App. Div. 5, 10, 11; 230 N. Y. 543). The discretion of the lawmakers is not subject for that alone to the revision of the courts. The statute now before us is not one to refund the moneys in the public treasury to groups or individuals singled out for arbitrary favor. It is not in plan or essence a refunding scheme at all. The refunds, if any, are incidental merely, and exceptional. They will not be necessary in any number, for in general the tax has not been paid, and it has not been paid because the administrative agents of the State had said it was not due. In plan and essence, the statute is one to revise the system of taxation upon the basis of a not irrational conception of equality and justice. Very likely the Legislature thought that the existing statute, if properly construed, would have revealed the same conception at its core. The belief may have been error, yet in that event the need was all the greater for the adoption of a new system to the end that the conception might prevail. As an incident to this plan of revision and readjustment, the appellant may become entitled to a refund of the tax which he paid under protest to make his challenge of the tax effective. The special benefit to him remains an incident and accident. What has been purposed by the Legislature is not a gratuity to one, but equity to all. The Constitution does not prohibit readjustment of the public burdens in the pursuit of ends so high (*People ex rel. Lucey* v. *Malloy, supra; Matter of Pardee* v. *Rayfield, supra; Matter of Borup*, 182 N. Y. 222; *Oswego & Syracuse R. R. Co.*, v. *State*, 226 N. Y. 351.)

A point is made that the act of 1926 goes counter to article III, section 21, of the Constitution of the State. By that section, " no money shall ever be paid out of the treasury of this State or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law." The question is not here whether in default of adequate appropriation, the reaudit will be effective to give the appellant back his money. In point of fact, a fund is established by section 382 of the Tax Law for the repayment of taxes erroneously collected (*cf.* § 373, subd. 3, as amended by L. 1926, ch. 329). The result would be the same, however, though present appropriation were lacking altogether. Appropriation, if necessary, may be afterwards supplied.

The order of the Appellate Division should be reversed and the determination of the State Tax Commission annulled, with costs in the Appellate Division and in this court, and the proceeding remitted to said Commission to reaudit the tax in accordance with this opinion.

HISCOCK, Ch. J., POUND, McLAUGHLIN, CRANE and LEHMAN, JJ., concur; ANDREWS, J., absent.

Ordered accordingly.