In the Matter of the Application of THE SYRACUSE TRUST COMPANY, as Trustee of the Trusts Created by RICHARD MATHER and Others, as Agent for IDA F. LOVELACE, and as Administrator with the Will Annexed and as Trustee of KATHERINE MATHER SIMMS, Deceased, Petitioner, for an Order of Certiorari against THE BOARD OF SUPERVISORS OF THE COUNTY OF ONEIDA, NEW YORK, Appellant, and the CITY OF UTICA, Respondent.

Fourth Department, November 10, 1939.

*Francisco Penberthy, County Attorney,* for the appellant.

*Bartle Gorman, Corporation Counsel* [*M. Francis Malone, Assistant Corporation Counsel,* of counsel], for the respondent.

*Estabrook, Estabrook & Harding* [*William H. Harding* of counsel; *A. Van W. Hancock* with him on the brief], for the petitioner.

DOWLING, J. In 1932 the board of assessors of Utica prepared the assessment rolls for the 1933 city tax. They assessed the Arcade Building, owned by the petitioner, for $800,000. On grievance day the petitioner protested the assessment but the board refused to reduce it. The petitioner, thereupon, instituted proceedings to review the assessment and it procured an order reducing it to $429,000. The city of Utica appealed and the order was affirmed both in the Appellate Division and in the Court of Appeals. (*People ex rel. Syracuse Trust Co.* v. *Remmer,* 249 App. Div. 905; 275 N. Y. 589.) On March 1, 1933, the petitioner paid to the city treasurer of Utica, under protest, the sum of $5,397.88 for the 1933 city, county and State taxes. The order reducing the assessment provided that " any excess taxes paid on said assessments shall be repaid to the petitioner with interest from the date of payment of the tax until the date of the payment of the rebate." The order did not provide that the city of Utica should make the refund. The county of Oneida was not a party to the certiorari proceedings. On November 12, 1937, the petitioner served a certified copy of the final order reducing the assessment on the county treasurer of Oneida county. The refund amounted to $2,503.27, with interest thereon from March 1, 1933. This item relates exclusively to county and State taxes.

On May 11, 1938, the board of supervisors of Oneida county adopted a resolution containing the following provision: " Resolved, that the County Treasurer be, and he hereby is authorized and directed to refund to said Syracuse Trust Company, as trustee, the sum of $2,503.27 with interest thereon from March 1, 1933, to the date of payment on account of said erroneous assessment, and charge the same back according to law." The petitioner made

demand on the county treasurer that he pay the refund but he refused to make payment as requested. On August 10, 1938, the board of supervisors adopted the following resolution: " Resolved, that resolution 111 adopted at the May 11th, 1938, session of this Board, authorizing a refund for erroneous assessment on the Arcade Building, Genesee Street, Utica, N. Y., be, and the same hereby is, rescinded." On September 12, 1938, the petitioner served on the county comptroller, the county treasurer, the clerk and the chairman of the board of supervisors a duly verified claim for $2,503.27, with interest thereon from March 1, 1933. On September 14, 1938, the board of supervisors adopted the following resolution: " Resolved, that the said claim of the Syracuse Trust Company as Trustee of the Trusts created by Richard Mather, et al., be, and the same hereby is, rejected."

On October 13, 1938, the petitioner moved under article 78 of the Civil Practice Act, on notice to the board of supervisors, at a Special Term of the Supreme Court, for an order commanding the board of supervisors to certify and to send to the county clerk of Oneida county all proceedings had before said board in anywise relating to the petitioner's claim for a refund to the end that the action of said board in rejecting its claim for such refund be quashed and that said claim be allowed. On October 17, 1938, an order was made, on consent, joining the city of Utica as a party defendant in this proceeding. The board of supervisors served a copy of its answer and a cross-complaint on the city of Utica and it in turn served an answer to the cross-complaint and the petition herein. The city asked for a final order dismissing the petition and cross-complaint as to it and directing that the county of Oneida pay the refund to the petitioner. The board of supervisors prayed that a final order be made dismissing the petition as to it and directing that the city of Utica pay said refund to the petitioner. The issues thus framed were tried at a Special Term of the Supreme Court held at Utica in January, 1939. There being no disputed questions of fact, the learned court disposed of the matter as an issue of law. The court rendered its decision and made an order quashing the action of the board in rejecting petitioner's claim for a refund and directing the board of supervisors " to allow and audit the said claim and to direct and authorize the County Treasurer of Oneida County to refund to said petitioner the sum of $2,503.27 with interest thereon from March 1, 1933, to the date of payment of said refund." This order was entered in Oneida county clerk's office on February 24, 1939. On March 7, 1939, the board of supervisors appealed to this court from each and every part of said

order and gave notice that it would bring up for review on the appeal the opinion rendered and the findings of fact and conclusions of law made by the court.

Subdivision 2 of section 2 of article IV of the Utica City Charter (Laws of 1923, chap. 658) provides: "A separate assessment roll shall be made for each ward of the city, prepared as prescribed by the Tax Law, except that they shall contain sixth and seventh columns. The said board of assessment and taxation shall insert in the sixth column the city tax and file said assessment roll with the city tax thereon duly verified by the assessors as prescribed by law, in the city clerk's office, and said city clerk on or before October fifteenth in each year shall deliver to the supervisor of each of the several wards of the city the said assessment rolls, and such supervisor shall deliver the same to the board of supervisors as the assessment rolls of the city, and upon such assessment rolls the board of supervisors shall insert, or cause to be inserted, in the seventh column thereof, the amount of the State and county tax, and attach thereto their warrant for the collection thereof, and the same shall thereupon be filed by the supervisor of such ward with the board of assessment and taxation of the city. It shall be the duty of each supervisor of the city to make one copy of the assessment roll of his ward, including the tax so inserted by the board of supervisors and the warrant so attached, which copy he shall certify to be correct, and deliver the same, upon receiving the proper bond, to the city treasurer, or collector, as required by law. The board of assessment and taxation shall make one copy of each of said rolls containing the city tax and deliver the same to the city treasurer."

Section 19 of article V of the Utica Charter relates to assessments remaining unpaid for city, county and State taxes. This section requires the city to pay to the county the full amount of the tax certified whether collected or not. Upon payment the city is empowered to enforce payment as in case of a delinquent city tax.

Section 12 of chapter 559 of the Laws of 1902, an act in relation to the enforcement and collection of taxes in the county of Oneida, provided in part: "Whenever any tax, illegally or improperly assessed or levied, shall be collected * * * the board of supervisors of said county may upon proper application therefor, refund the amount of the tax * * * so paid with interest, the same to be presented and audited as other county charges. If the error, illegality, irregularity or defect originated with a county officer the sum refunded shall be a county charge, if with a city or town officer the sum refunded shall be a charge against the city and

town of Utica or the town with whose officer the error, illegality, irregularity or defect originated."

Section 58 of article 3 of the Tax Law provides: " The board of supervisors of each county shall, at its annual meeting, levy the taxes for the county, including the State tax, upon the valuations as equalized by it and estimate and set down in a separate column in the assessment-roll of each tax district therein, opposite to the sums set down as the valuation of real property the sum to be paid as a tax thereon, including the State tax, as fixed by the department of taxation and finance. Such assessment-roll shall, when the warrant is annexed thereto, become the tax-roll of the tax district, and a copy thereof shall be delivered to the proper supervisor, who shall deliver it to the clerk of the proper city or town to be kept by him for its use."

Pursuant to this section and on November 30, 1932, the board of supervisors of Oneida county adopted a resolution which provided in part: " Resolved, That there be levied and assessed upon the property of this County of Oneida, taxable therefor, for State and county purposes, and for the highway purposes, the sum of One Million, Four Hundred Ninety-six Thousand, Three Hundred Ninety-eight and 6/100 Dollars ($1,496,398.06)."

The assessment rolls for the 1933 city taxes were completed by the board of assessors of Utica in October, 1932, and they were delivered to the board of supervisors as provided by statute. The board of supervisors spread the county and State tax for the year 1933 on the tax rolls of the city of Utica and on December 21, 1932, the board adopted the following resolution: " Whereas, the taxes have been extended on the several tax rolls, now, therefore, be it Resolved, that the Assessment Rolls of the several towns and wards of the County, with the taxes extended thereon, be and they hereby are the tax rolls of the several towns and wards, and the same are in all things hereby ratified and confirmed, and that the Chairman and Clerk of this Board be and they are hereby authorized and directed to issue warrants to the collectors and city treasurers of the several towns and cities of the county respectively, for the collection of the taxes as extended on the several tax rolls of the county." Warrants were duly issued pursuant to this resolution. The tax rolls, duly certified, together with the warrants were delivered in due course to the treasurer of Utica. State and county taxes levied in Utica are payable in March and city taxes are payable in October of each year.

The appellant relies quite heavily on *People ex rel. Oswego Falls Corp.* v. *Foster* (251 App. Div. 65, 69) and on section 12 of chapter

559 of the Laws of 1902 to sustain its claim that the county of Oneida should not be held liable to make the refund in question. Neither sustains appellant's contention. In *People ex rel. Oswego Falls Corp.* v. *Foster* (*supra*) the court found that the county of Oswego did not levy the city's share of the State and county tax. Owing to charter provisions the levy for these taxes was by the city of Fulton and this is the distinguishing feature between the two cases.

Whether section 12 of chapter 559 of the Laws of 1902 was impliedly repealed by chapter 658 of the Laws of 1923 we are not called upon to determine for the reason that section 12 does not relate to an assessment which is merely erroneous as was the assessment before us. Section 12 relates to a tax which is "illegally or improperly assessed." The assessment in question was neither illegally nor improperly assessed. The board of assessors of Utica had jurisdiction both of the property and of the owners thereof. The assessors merely overvalued the property. The assessment, consequently, was neither improper nor void. It was erroneous merely. The distinction between an erroneous and an illegal assessment is this: An erroneous assessment occurs when the assessors have power to act but err in the exercise of the power. An illegal assessment occurs when the assessors have no power at all to act. (*People ex rel. Soeurbee, Inc.,* v. *Purdy,* 179 App. Div. 748, 750; affd., 222 N. Y. 657; *People ex rel. W. S. R. R. Co.* v. *Adams,* 125 id. 471, 484.) "It [erroneous] means or imports the power to act, but error in its exercise." (Ballentine's Law Dict. [1930] p. 444.) No charge of bad faith, dishonesty, fraud or malice on the part of the assessors in making the Arcade assessment is here made. The assessors, at most, were guilty of an honest error of judgment. In the absence of any provision in the special acts (Laws of 1902, chap. 559; Laws of 1923, chap. 658) relating to refunds the general Tax Law governs. Section 296 of article 13 of the Tax Law relates to "Refund of tax paid upon illegal, erroneous or unequal assessment."

Subdivision 1 of section 296 provides in part: "When such tax upon such illegal, erroneous or unequal assessment shall have been levied by the board of supervisors, then at an annual session of the board of supervisors held after the order for such correction has been granted and entered there shall be audited and allowed to the petitioner or other person who shall have paid such tax, and included in the tax levy of the town, village, city or special district in which the property is situated, made next after the entry of such order, and paid to the petitioner, or other person paying the

tax, the amount paid by him, in excess of what the tax would have been if the assessment had been made as ordered, adjudged or determined by such order of the court, together with the interest thereon from the date of payment."

Subdivision 2 of section 296 provides: " When a tax, or any part thereof upon such illegal, erroneous or unequal assessment shall have been levied by the proper officers of any city or village, solely for the benefit and purposes of such city or village, then the common council or other auditing officer or officers of such city or village shall immediately after such correction audit and allow, to the petitioner or other person who shall have paid such tax, or the part thereof levied solely for the benefit and purposes of such city or village, and include in the tax levy of such city or village in which the property is situated made next after the entry of such order and cause to be paid to such petitioner or other person paying such tax, or the part thereof levied solely for the benefit and purposes of such city or village, the amount paid by him in excess of what the tax or the part thereof levied solely for the benefit and purposes of such city or village, would have been if the assessment had been as ordered, adjudged or determined by such order of the court, together with interest thereon from the date of the payment."

Since the board of supervisors of Oneida county levied the State and county tax in question, that body should have audited and allowed the petitioner's claim for a refund pursuant to the plain mandate of the statute. This results in no inequity because the statute affords the county a remedy, if promptly pursued, of including the refund in the tax levy for Utica made next after the entry of the order reducing the erroneous assessment. The city of Utica refunds only that part of the tax which was levied solely for the benefit and purposes of the city of Utica.

The final order appealed from should be affirmed, with costs.

All concur. Present — CROSBY, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Final order affirmed, with costs.