In the Matter of SENECA HOTEL CORP., Appellant, *v.* BOARD OF SUPERVISORS OF ONTARIO COUNTY, Respondent.

Fourth Department, June 27, 1963.

*Bonney & Nicit (John J. Nicit* of counsel), for appellant.

*Hugh M. Jones, Jr., County Attorney,* for respondent.

HALPERN, J. This proceeding is a sequel to *Matter of Seneca Hotel Corp.* v. *Chacchia* (13 A D 2d 896, affd. 10 N Y 2d 1031). In that case, we modified an order reducing the assessment on the petitioner's property and affirmed the order as modified. The order as affirmed provided: " 5. That the Common Council of the City of Geneva, New York at the next budget or other appropriate meeting following entry of this order shall audit, allow and pay to petitioner that part of the taxes representing city tax for the year 1960 and school tax for year 1959–1960 and being in excess of what such tax would have been if the assessment complained of had been as herein ordered and determined, together with interest thereon at three percent (3%) from the date of payment as provided in Real Property Tax Law, Sec. 726 ". The order further provided in paragraph 6 that the Board of Supervisors of Ontario County should take similar action with respect to " that part of the taxes representing state and county tax for the year 1960 ".

The city repaid its part of the excess or erroneous tax pursuant to the order, after affirmance by the Court of Appeals, but the county refused to refund its part. This proceeding was thereupon brought to compel the county to make the necessary refund but the petition was dismissed at Special Term upon the ground that it was the duty of the city to make the entire refund of the tax erroneously collected, including that portion representing county taxes.

We are met at the threshold by the claim of the appellant that the order in the tax certiorari proceeding constituted a final adjudication which is binding upon the county, under the principle of *res judicata*. This is undoubtedly true insofar as the portion of the order reducing the assessment is concerned. Since

the county made no assessments of its own but used the assessments made by the City Assessors, the City Assessors were the only necessary parties to the tax certiorari proceeding. The county is bound by the order reducing the assessment made in the proceeding against the City Assessors, even though it was not a party to the proceeding (*Erie R. R. Co.* v. *City of Rochester,* 256 App. Div. 551, affd. 282 N. Y. 601; *Matter of Delaware, Lackawanna & Western R. R. Co.* v. *Board of Supervisors,* 260 App. Div. 382). As a matter of fact, the county does not question the correctness of the order insofar as it reduced the assessment in this case.

The county does, however, question the correctness of that part of the order in the tax certiorari proceeding which directed it to pay part of the refund. The county has not heretofore had an opportunity to be heard on that question and hence its objection cannot be disposed of on the ground of *res judicata.* We must determine *de novo* in this proceeding the duty of the city and county respectively, to pay the refund owing to the petitioner.

Under section 132 of the Charter of the City of Geneva (L. 1897, ch. 360, as amd. by Local Law No. 7, 1951), the city is responsible for the collection of the county taxes upon property within the city. Under the charter provision, the county certifies to the city the total county tax upon property located within the city and the levy of the county taxes upon individual properties is then made by the city and the city pays over the taxes collected by it to the county. Under a provision of this type, it has been held that the city must bear the loss, if the taxes turn out to be uncollectible, since the machinery for the collection of the county taxes on property within the city is placed entirely under the control of the city (*Matter of County of Oswego* v. *Foster,* 262 N. Y. 439; *Town of Amherst* v. *County of Erie,* 260 N. Y. 361). But this has nothing to do with the rectification of errors in the assessed valuation of the properties taxed. The statute (Tax Law, § 296) does not cast upon the city the ultimate responsibility for the making of refunds of erroneous taxes which it collected and turned over to the county. We believe it to be clear under the scheme of the statute that the ultimate responsibility for the refund of erroneously collected taxes falls upon the municipality or political subdivision for whose benefit the tax was collected. In the case of *People ex rel. Oswego Falls Corp.* v. *Foster* (251 App. Div. 65, 69, affd. 278 N. Y. 494) upon which the county relies, the court merely held that "the city should make good, *in the first instance at*

*least,* any mistake in its assessment '' (emphasis added) but the court did not hold that the city would have to bear the whole loss without any right of reimbursement from the county.

Section 296 of the Tax Law does not spell out in detail the manner of the reimbursement of the city by the county for the county's share of the refund, where the county's taxes had been certified to the city for inclusion in the city tax rolls, and the city had paid the whole refund in the first instance. But it is the clear intent of subdivision 2 of section 296 of the Tax Law that only the part of the refund attributable to taxes '' levied * * * solely for the benefit and purposes of such city '' should be ultimately borne by the city. It is true that in the *Oswego Falls* case, the court gave a somewhat strained meaning to the words '' solely for the benefit and purposes of such city '' in order to justify compelling the city to pay the whole of the refund in the first instance but this did not affect the fact that, as between the city and the county, the city was entitled to reimbursement for the part of the refund attributable to a tax which had been levied solely for the benefit and purposes of the county.

Once it has been determined that the ultimate responsibility for the county's share of the refund rests upon the county, there is no reason why a direct proceeding may not be maintained against the county by the aggrieved taxpayer to compel payment of the refund. The position of the county then becomes a purely technical one that the petitioner should in the first instance recover the refund from the city, leaving it to the city to seek reimbursement from the county later. There is no reason why, under modern practice, we cannot cut through the circuitous procedure proposed and require the county to pay the petitioner its share directly.

The *Oswego Falls* case (251 App. Div. 65, *supra*) did not hold that a direct proceeding against the county could not be maintained by the taxpayer for the county's share of the refund. It merely held that the taxpayer could, if he chose, require the city to refund the whole of the erroneously collected tax, without going to the trouble of pursuing each of the ultimate recipients of the tax separately.

In the later case of *Matter of Syracuse Trust Co.* v. *Board of Supervisors* (258 App. Div. 17) involving county taxes upon property in the City of Utica, the court sustained a direct proceeding against the county for its share of the refund. The court pointed out that under the statute the city was to refund '' only that part of the tax which was levied solely for the bene-

fit and purposes of the city'' (p. 23, and, see, Tax Law, § 296, subd. 2). The court distinguished the *Oswego Falls* case upon the ground that in that case, under the charter provisions of the City of Fulton, the county certified to the city the total county tax upon property located within the city and the levy of the county taxes upon individual properties was made by the city, whereas under the Utica City Charter, the county added its tax to the city tax rolls for each parcel of property and in this sense the county levied its own tax. However, this difference does not seem to us to be a material one. The City of Utica was responsible for the collection of the whole tax, including the county's share, under the Utica City Charter but the court nevertheless held that the county was bound to refund directly its share of the excess tax. The authority of the opinion in the *Oswego Falls* case was thus seriously impaired by the *Syracuse Trust* case.

In the early case of *People ex rel. New York Cent. & Hudson Riv. R. R. Co.* v. *Matthias* (84 App. Div. 122) the court dealt with a similar problem. The statute (then section 256 of the Tax Law which later became section 296 of the Tax Law) provided for the refund by the county in the first instance of the whole of an excess or erroneous tax, where the county had included taxes for town and school purposes in the county levy, subject to reimbursement from the town for the portion of the refund attributable to a tax for town purposes. The Appellate Division held that it was proper for the court in the tax certiorari proceeding to order the town to repay directly to the petitioner the town's share of the refund.

Section 726 of the Real Property Tax Law, as enacted by chapter 959 of the Laws of 1958, in effect October 1, 1959, replaced section 296 of the Tax Law. There is a dispute between the parties as to which statute governs this case, the petitioner maintaining that section 726 controls and the county maintaining that section 296 is controlling, but, in our view, the result is the same, whichever section is applied. According to the note by the Advisory Committee which drafted the statute, the Real Property Tax Law was intended only as a codification of the pre-existing law, '' without substantive change '' except as set forth in the notes following the sections affected. There are no notes to section 726 indicating an intent to make any substantive change here relevant.

The order appealed from should be reversed and the motion to dismiss the petition should be denied and the proceeding remitted to the Special Term for further proceedings not inconsistent with this opinion.

WILLIAMS, P. J., BASTOW, GOLDMAN and McCLUSKY, JJ., concur.

Order unanimously reversed, with $25 costs and disbursements, motion denied and proceeding remitted to Special Term for further proceedings not inconsistent with the opinion.